## Nelson Creek Coal Co. v. West Point Brick & Lumber Co.

(Decided January 31, 1913.)

### Appeal from Hardin Circuit Court.

1.  Contracts—Action for Breach of—Construction of Contract.—By a contract in writing of date October 25th, 1909, appellant under-

took to furnish appellee from its Nelson Creek mine, what coal it would need for manufacturing brick "for the remainder of the brick season, say from this date to April 1st, 1910." Appellee sued to recover damages for a breach of the contract, alleging that appellant failed to deliver it coal both in March and April, 1910. As by the language of the written contract it was to end April 1st, 1910, and neither fraud nor mistake in its execution was alleged, it must be taken to mean that the fixing of April 1st, 1910, as the date of its termination was not a mere approximation of the time it would end, but an absolute limit, beyond which it could not extend, although the brick-making season did not, in fact, then close.

2.  Contracts—Mines and Mining—Contract to Furnish Coal—Freight Charges.—As appellant in March, 1910, supplied appellee with two car-loads of coal from a mine other than its own, because unable to furnish it from its own mine as it had contracted to do, and appellee was compelled to pay for the transportation of the coal, ten cents per ton more than the freight would have cost it, had the coal been shipped from appellant's mine, within the time fixed by the contract for appellant to deliver it from its own mine, the circuit court properly gave appellee judgment against appellant for the excess in freight charges paid by it on the March delivery of coal.

3.  Contracts—Mines and Mining—Contract to Deliver Coal—Breach of.—Appellee was not, however, entitled to judgment against appellant—and the circuit court erred in so holding—for the excess in cost of and freight on the four car-loads of coal, obtained from another mine, through appellant, in April, 1910, as this coal was ordered and received by appellee after April 1st, 1910, and following the termination of its contract with appellant, and the latter acted as its mere agent and for its accommodation in obtaining for it the coal.

GEORGE HOLBERT, and BELCHER & SPARKS, for appellant.

L. A. FAUREST, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE.—Reversing.

Appellee, a manufacturer of brick, entered into the following written contract with the appellant Coal Company:

"West Point, Ky., Oct. 25th, 1909.

All concerned:

The Nelson Creek Coal Company agrees to sell to the West Point Brick and Lumber Company their entire wants in screened nut coal, and the West Point Brick and Lumber Company agrees to buy its entire supply of screened nut coal from the Nelson Creek Coal Company for the remainder of the brick making season, say from this date to April 1st, 1910. The price is to be eighty-five cents per ton, f. o. b. the mines. It is agreed that when

coal is needed, the West Point Brick and Lumber Company will give the mine or its representative at Louisville, at least five days notice. The Nelson Creek Coal Company agrees to use every effort in its power to make prompt shipments, but will not be responsible for car shortage or other delays beyond its control.

Nelson Creek Coal Company,

By J. W. Bastin, Genl. Mgr

West Point Brick & Lumber Company,

By J. W. A. Meyers, Sup't.''

Appellee brought suit in the court below to recover damages for an alleged breach of the above contract, it being alleged in the petition that appellant failed, when notified by appellee, to deliver it coal as therein agreed, both in March and April, 1910.

The answer specifically denies the several breaches of the contract alleged and avers that the contract terminated April 1st, 1910.

When the case was called for trial, a jury was waived by the parties and the law and facts submitted to the court, which, after hearing the evidence, rendered judgment in appellee's favor for $249.68 and the costs of the action. Appellant's dissatisfaction with that judgment and the refusal of the court to grant it a new trial, led to this appeal.

The first alleged breach of the contract occurred in March, 1910. Early in the month appellee duly notified appellant to send it two car loads of coal. The latter said it could not furnish the coal from its own mine as it had sold its entire output to the Illinois Central Railroad Company, but would order it sent from the Bevier mine at Cleaton. This was done sometime in March. For these two carloads of coal appellee was charged by and paid the Bevier mines, 85 cents per ton, the contract price it would have paid if the coal had been shipped from appellant's mine; it, however, had to pay 70 cents per ton freight on the Bevier coal, which was 10 cents in excess of the freight it would have paid on the coal, if it had been shipped from appellant's mine as contemplated by its contract with the latter. In other words, the freight rate at that time on such coal from appellant's mine to appellee's place of business, was 60 cents per ton, but from the Bevier mine it was 70 cents per ton.

As under the contract between them appellant undertook to ship appellee the coal delivered in March from

its own mine, and appellee, if it had done so, would have paid a freight rate thereon of only 60 cents per ton, when it failed to ship the coal from its own mine and required appellee to receive it from another and more distant mine at an increased freight rate, it became liable to appellee for the amount of such increase. For this amount, 10 cents per ton, appellee recovered judgment in the court below and to that extent the judgment is correct and free from error.

In other respects, however, we regard the judgment erroneous.

If, as claimed by appellant, the contract did not require it to deliver the appellee any coal after April 1st, 1910, judgment should not have gone against it for the failure to deliver coal at the contract price, ordered and received by appellee in April. As neither fraud nor mistake in the execution of the contract is alleged, and appellant's manager and appellee's superintendent, by whom the contract was made, differ in their testimony on this point, the former contending that it was agreed it should end April 1st and the latter at the end of the brick making season, we must interpret the contract in the light of its language, and, in our opinion, its meaning is that it was to terminate April 1st, 1910.

In interpreting a contract the real intention of the parties must be allowed to control, and if the contract is unambiguous, such intention must be gathered from its language. Trapp v. Conly, 89 S. W. 514; Bright v. Bacon & Sons, 131 Ky. 848; Lexington B. S. Ry. Co. v. Moore, 140 Ky. 514. By the language of the contract appellant was to furnish appellee coal "for the remainder of the brick making season, say from this date, to April 1st, 1910." The giving of April 1st as the date of the termination of the contract, was not a mere approximation of the time it should end, but an absolute limit, beyond which it could not extend; so, in our opinion, the contract did not require appellant to furnish appellee any coal after that date, although the brick making season may not, in fact, then have ended.

It appears from the evidence that appellant at appellee's request, made after April 1st, ordered for it from the Bevier mine, four car loads of coal which were delivered between the middle and last of April, and that for this coal the Bevier Company charged, and appellee was compelled to pay, $1.10 per ton, and freight charges

of $1.20 per ton. On this shipment of coal the Circuit Court allowed appellee judgment against appellant for the difference between 85 cents per ton, which was the price the former would have been required by the contract to pay the latter, and the $1.10 paid the Bevier Company; and the difference between the freight of 60 cents per ton, it would have paid appellant if the coal had been shipped from its mine, and the freight of $1.20, paid on the coal from the Bevier mine. This was palpably wrong. The last lot of Bevier coal received by appellee was not shipped under the contract, but was obtained through appellant as its agent after the contract had terminated.

Wherefore the judgment is reversed and cause remanded for the entering of such a judgment as will conform to the opinion.