## Keen, et al. v. Ross.

(Decided December 12, 1919.)

### Appeal from Cumberland Circuit Court.

1. Contracts—Restraint of Trade.—A contract which is in general restraint of trade, is void, but an agreement ancillary to the sale of a business, in partial restraint of trade, is enforcible, if the agreement does not prohibit the party selling the business from engaging in the business at all, and the restraint is not so great as to deprive the country of the benefits following the conduct of such a business.

2. Contracts—Restraint of Trade—Injunction.—Injunction is the proper remedy where a valid contract in partial restraint of trade has been violated.

3. Contracts—Construction—Intention of Parties.—The essential thing in construing contracts is to ascertain from the terms thereof the intention of the parties and interpreting it so as to carry

out that intention. As an aid to the court in ascertaining the intention of the parties it may look at the conditions and circumstances under which the contract was made, as well as the object intended to be accomplished.

4. Livery Stable Keepers—Care and Hiring of Horses.—A livery stable is a place where horses are groomed, fed and hired, and where vehicles are let, and such vehicles need not be those drawn only by horses, but include all others used in the transportation of persons, whether drawn by horse power or any other power in common use.

5. Contracts—Violation of—Injunction.—Defendant sold his interest in the livery business to plaintiff and agreed not to again engage in that business in the same town so long as plaintiff was engaged in it. He afterwards began the operation of an automobile for indiscriminate hire to the public: Held that these acts on his part constituted a violation of the object and purpose of his contract, and that injunction by the plaintiff was an appropriate remedy therefor.

PRESCOTT SANDIDGE for appellants.

W. G. KEEN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Prior to July 17, 1915, the appellants and plaintiffs below, J. R. Keen and C. C. Baker, with Dix Comas, were equal partners with the appellee and defendant below, J. F. Ross, in the livery business in Burkesville, Kentucky. The firm owned some real estate and a livery stable situated thereon, some wharf privileges on the Cumberland river, some horses, vehicles, and the contract to carry the United States mail between Burkesville and Glasgow, Kentucky. On the day mentioned the defendant Ross sold his one-fourth interest in the property and business of the firm to the plaintiff Baker, which sale was evidenced by a written contract transferring the personal property and conveying the defendant's one-fourth interest in the real estate owned by the firm. In the contract is this clause:

"This sale and conveyance terminates a partnership that has been in operation, composed of J. R. Keen, Dix McComas, J. F. Ross and C. C. Baker, and for the consideration above recited in addition to conveying the above mentioned property to said C. C. Baker, the said J. F. Ross hereby agrees and binds himself never again to engage in the livery business in the town of Burkes-

ville, Ky., either individually or as a member of a partnership or a stockholder or officer of a corporation, or joint stock company, so long as the said C. C. Baker and J. R. Keen and Dix McComas, or any one of them, are engaged in said business in said town.''

Within a short time thereafter the defendant became interested in an automobile agency in Burkesville, and besides dealing in automobiles he commenced to operate one in the transportation of persons for hire. Claiming that such operation violated the terms of the contract, plaintiff Baker and his other partner brought this suit against the defendant to enjoin him from doing so. The court upon trial dismissed the petition, and complaining of that judgment plaintiff appeals.

It is at once apparent that the question involved is the interpretation of the above quoted clause in the contract, and whether the matters complained of in the petition come within those terms. Before taking up this question it might be well to state that a contract in partial restraint of trade of the nature of the one here involved is enforcible, provided the restraint is reasonable and is not so extensive as to affect the interest of the public. Breeding v. Tandy, 148 Ky. 345, and Torian v. Fuqua, 175 Ky. 428. In the latter case, speaking directly upon the point, this court said:

''Hence, agreements in restraint of trade, which are ancillary to the sale of a business and which prohibit the vendor from engaging in the business, at a particular place, or for a designated time or with particular persons, are valid and enforcible if the restrictions are reasonable.''

The business sold in that case, and to which the restraint applied, was the undertaker's business and the contract obligated the seller never to engage in the business anywhere in Trigg county so long as the purchaser continued in that business in the same county, and while the court recognized the above principle, it held that the restraint was so extensive in its effect as to prejudice the interest of the public, and for that reason declined to uphold it.

In the Breeding case the alleged violated contract was precisely like the one in the instant case, involving a sale of a livery business and obligating the seller not to engage in the same business in Glasgow as long as.

his purchaser continued in that business at the same place. This court upheld the contract, and also held that injunction was the proper remedy if the contract should be violated.

Looking now to the merits of the case, the fundamental rule in the interpretation of contracts is to ascertain from their terms, if possible, the intention of the parties, and to give it such construction as will carry out that intention. Lexington & Big Sandy Railway Company v. Moore, 140 Ky. 514; Nelson Creek Coal Co. v. West Point Brick & Lumber Co., 151 Ky. 835, and Owens v. Georgia Life Insurance Company, 165 Ky. 507. A rule of likewise universal application is that to aid the court in determining the intention of the parties it may consider their situation and circumstances, the conditions surrounding them at the time of making the contract, and the object intended to be accomplished thereby. The essential thing is for the court to look at the contract from the standpoint of the parties at the time they executed it, and the purpose they had in view in doing so. (See cases, *supra*.)

Applying these rules to the contract under consideration, it will be seen that there is no ambiguity in its terms, nor is there any doubt of the object which the parties had in view, or the purpose which they intended to accomplish; i. e., that defendant would not engage in the "livery business" within the place and during the time stipulated. The only task before us, then, is to determine what the parties meant by the phrase "livery business" as used in the contract, and then to find whether the complained of acts of the defendant come within the terms of that definition. Mr. Webster, in the latest edition of his International Dictionary, defines the word "livery" to be: "The feeding, stabling and care of horses for pay; boarding; as the keeping of one's horse at livery; the keeping of horses in readiness to be hired temporarily for riding or driving. A livery stable." He definies a "livery stable" to be "a stable where horses and vehicles are kept for hire, and where stabling is provided." From these definitions we see that the word "livery" as applied to the business here involved means the same as the term "livery stable," the same as if the defendant had obligated himself not to engage in "the livery stable business."

In Rawle's third edition of Bouvier's law dictionary, "livery stable" is defined as "a place where horses are groomed, fed and hired, and where vehicles are lent." Substantially the same definition is given in 17 R. C. L. 1045; 19 A. & E. Ency. of Law, second edition, 430, and 25 Cyc. 1505.

A research into the history of the business shows that at the beginning the service rendered by one operating a livery stable consisted only in boarding or keeping horses in consideration of stipulated charges. The scope of the business was gradually enlarged until it included not only the boarding of horses belonging to others, but the hiring out of horses and vehicles to the public. The latter branch of the business has long since been its chief source of revenue. The definitions referred to, which include the enlarged scope of the business, are not confined to the mere hiring of horses, but they likewise include the hiring of vehicles.

Until recent years the only motive power for vehicles in use in "livery business" was horses, and therefore reference is made to them in the definition, not because the legitimate scope of the business was to be confined to horse drawn vehicles, but rather because it was only that character of vehicles which were in use and which were hired by the keeper of a livery stable. The service rendered could as effectually be accomplished by a vehicle drawn or propelled by any other motive power, and it would be an extremely narrow interpretation to hold that a particular service if rendered in a particular way and by the use of certain means would appertain to and be a part of a particular business, but if rendered in another way, and by different means it would not be a part of that business. Such a holding would surrender the substance to the shadow, a thing which the law does not tolerate. Definitions of terms in use by the people, like the law itself, are constantly expanding so as to apply to new and improved conditions, and to keep pace with the rapid advance of science. We are not therefore to conclude that service rendered by livery stable keepers is none the less livery service because it is rendered with motor drawn instead of horse drawn vehicles. We know, as a matter of current history, that the transportation of members of the public for hire is now largely being performed with the use of the automobile,

which has in great measure supplanted the old horse drawn carriage and its companion, the buggy. It is therefore patent that the contracting parties in the instant case at the time of the execution of the contract intended to deprive the defendant of the right of performing any service for the public which was an essential part of that performed by one engaged in the livery business, and the fact that such service was performed in a different manner from the way it was formerly done will not excuse the defendant in violating the very purpose and object intended by the contract.

We would not be understood as holding that a stipulation in a contract like the one here involved would prevent the obligor from establishing a regular line of transportation between designated points, and operating his vehicles on schedule time, since such business would be that of common carrier rather than that of the keeper of a livery stable. We do hold, however, that the conduct of the defendant in hiring his machine to all applicants and transporting them to and from Burkesville is performing the service of a livery man, which is in violation of his contract, and the court erred in dismissing the petition.

Wherefore, the judgment is reversed, with directions to set it aside and to enter one in conformity with this opinion.