Ray WHITAKER et al., d/b/a Blue Motor Coach Lines, Appellant,

v.

LOUISVILLE TRANSIT COMPANY, the City of Louisville, and the Department of Motor Transportation, Commonwealth of Kentucky, Appellees.

Court of Appeals of Kentucky.

June 25, 1954.

As Modified on Denial of Rehearing Dec. 17, 1954.

Further Modification Jan. 10, 1955.

William A. Young, Harry McChesney, Jr., Robert H. Kinker, and Robert M. Pearce, Frankfort, for appellant.

John E. Tarrant, Earl S. Wilson, S. M. Russell, Alan N. Schneider, Louisville, J. J. Leary, Louis Cox, and George M. Catlett, Frankfort, for appellees.

COMBS, Justice.

The respective rights of Blue Motor Coach Lines and the Louisville Transit Company to maintain bus service in the Camp Taylor area of Louisville are in issue. The state Department of Motor Transportation held that both companies had the right to render such service. The circuit court held that the Louisville Transit Company had such right but that Blue Motor Coach Lines did not. Blue Motor has appealed. The City of Louisville, as one of the appellees, has filed a brief in which it is argued, in effect, that the judgment should be affirmed.

Blue Motor, since 1935, has maintained bus service between Camp Taylor, a suburb of Louisville, and the downtown section of the city, under a certificate of convenience and necessity issued first by the State Tax Commission and later by the State Department of Motor Transportation. No question is raised about the authority of Blue Motor to render such service prior to June 30, 1950. On that date the City of Louisville formally annexed approximately 95% of the Camp Taylor area. Blue Motor, subsequent to the judgment of annexation, made application to the city for a franchise covering the Camp Taylor area, but no franchise has been issued to it.

The Louisville Transit Company or its predecessor has furnished public transportation in the City of Louisville since 1890 under franchise from the city and certificate of public convenience and necessity from the proper regulatory agency of the state. In 1941 Transit purchased from the city, for a substantial consideration, a 20-year franchise under which it is now operating. By the terms of its franchise it is authorized to operate over all streets and highways of the city and is required to furnish city-wide transportation. Subsequent to the annexation judgment Transit applied to the city for authority to extend its service into the annexed portion of the Camp Taylor area. The requested authority was granted and since January, 1951, both Transit and Blue Motor have furnished transportation service in that area.

Blue Motor contends that by reason of the certificate which it holds from the Department of Motor Transportation authorizing such service, it has the right to maintain service in the same area it has served since 1935, regardless of the annexation proceedings by the city.

Transit argues that by reason of its franchise from the city and a certificate which it holds from the Department of Motor Transportation authorizing it to operate busses in the City of Louisville, it alone has the right to render such service within the city limits.

Before attempting to weigh these conflicting theories, we look briefly to those sections of the Constitution and statutes which may be applicable:

Kentucky Constitution, sections 163 and 164 as construed by this court in People's Transit Co. v. Louisville Railway Co., 220 Ky. 728, 295 S.W. 1055, confer upon cities the right of final decision as to whether a public utility may use or occupy the city

streets for an intra-city service. Kentucky Constitution, section 3, contains, among other things, the provision that "every grant of a franchise, privilege or exemption, shall remain subject to revocation, alteration or amendment."

KRS 281.010(13) provides:

"(13) (a) A 'city bus certificate' means a certificate granting authority only for the operation of motor vehicles carrying passengers for hire between points within the corporate limits of a city and over regular routes.

"(b) A 'city bus' is a bus when being operated under one or more city bus certificates."

KRS 281.635(1) provides:

"Notwithstanding anything contained in this chapter:

"(1) All cities of the Commonwealth are vested with the power to sell franchises or, where no franchise is sold, grant authorizations for the operation of city busses over their streets and highways; provided, however, no person shall apply for or obtain any such franchise or authorization from any city without a prior finding by the department, after a hearing, that there is a demand and necessity for the service sought to be rendered, * * *. Upon certification by the department to such city that there is a demand and necessity for the service sought to be rendered, any city may award any duly qualified person a franchise or authorization covering the proposed operation. Upon acquiring such a franchise or authorization, the holder thereof shall apply to the Department of Motor Transportation for a city bus certificate which shall be issued to the holder of the franchise or authorization without a hearing."

KRS 281.665 provides:

"(1) Any bona fide motor carrier or its successor operating city busses as of December 31, 1949, under a valid certificate, franchise, statute, authorization, or in bona fide operation on said date, shall be entitled to such certificate or certificates and of such type or types as are defined in this chapter that cover their operations as of December 31, 1949." (This is the so-called "grandfather" statute upon which Blue Motor places much reliance.)

With these sections of the Constitution and statutes in mind, we look now to the authorization granted by the state to the opposing companies:

Transit, prior to 1950, held a common carrier certificate of public convenience and necessity issued by the Public Service Commission in recognition of and as an incident of the franchise which it held from the City of Louisville. Following the Act of 1950 which created the state Department of Motor Transportation, that Department issued to Transit under the "grandfather" provisions of KRS 281.665 a city bus certificate as defined by KRS 281.010(13).

It should be noted that before 1950 the state issued only one type of certificate to motor carriers; i. e., a common carrier certificate without any distinction as to whether service rendered was within or without the corporate limits of a city. The 1950 Act authorized the Department to issue either a "city," "suburban," or "over-the-road" certificate, depending upon the type of service to be rendered. Hence, the last certificate issued to Transit was a city bus certificate in recognition of the type of service it renders.

Blue Motors, prior to 1950, also operated under a common carrier certificate, the certificate merely reading "from Louisville to Camp Taylor." Subsequent to the 1950 Motor Transportation Act, the Department issued to Blue Motor two certificates in lieu of its old common carrier certificate. One of the new certificates, covering territory outside the City of Louisville, was designated "suburban." The other certificate, which covers that part of Blue Motor's original territory which had been annexed by the city, was designated "city." These certificates also were issued in reliance upon the "grandfather" statute—KRS 281.665 (1). The point is made that Blue Motor's

new certificates were not issued until after Transit had already initiated bus service in the Camp Taylor area, but we do not regard the time element as significant. We think the rights of the parties became fixed as a matter of law when the Camp Taylor area was annexed in June, 1950.

We look now to what we consider the applicable law. It seems to us the logical starting point is the Kentucky Constitution, sections 163 and 164. It is clear from these two sections that the framers of the Constitution intended to confer upon cities the final right to decide whether a public utility may use or occupy the streets for an intra-city service. As already mentioned, this court so held in the People's Transit Co. case, 220 Ky. 728, 295 S.W. 1055.

It is also apparent that the Legislature, in enacting the 1950 Motor Transportation Act, carefully refrained from encroaching upon this constitutional right of cities. For instance, it is provided in KRS 281.635 that notwithstanding anything contained in the Act "all cities of the Commonwealth are vested with the power to sell franchises or, where no franchise is sold, grant authorizations for the operation of city busses over their streets and highways * * *."

Moreover, there can be no doubt that Transit's franchise covers not only the territory within the boundaries of the city at the time the franchise was let, but also such additional territory as may from time to time be annexed by the city. In Truesdale v. City of Newport, Ky., 90 S.W. 589, 590, it was said "the limits of the city year by year determine the limits of the contract."

It must also be kept in mind that KRS 81.100 et seq.—formerly Kentucky Statutes, §§ 2760 and 2761, Acts of 1893—which authorize a city of the first class to annex adjacent territory were in full force and effect when Blue Motor first acquired its certificate from the state.

It is a familiar principle of constitutional law that constitutional and statutory provisions in effect at the time a contract is made become a part of the contract. City of Henderson v. Henderson Traction Co., 200 Ky. 183, 254 S.W. 332; Williams v. Nall, 108 Ky. 21, 55 S.W. 706; Deposit Bank of Owensboro v. Daviess County, 102 Ky. 174, 39 S.W. 1030, 44 L.R.A. 825; Armour Packing Co. v. United States, 209 U. S. 56, 28 S.Ct. 428, 52 L.Ed. 681; San Francisco-Oakland Terminal Rys. v. Alameda County, 66 Cal.App. 77, 225 P. 304; 12 Am.Jur. 769, section 240.

Opposed to this line of reasoning is the argument of Blue Motor which, briefly summarized, is this: The certificate of convenience and necessity which Blue Motor has operated under since 1935 is a special franchise equivalent to a contract between the certificate holder and the state. The rights granted by the certificate are property rights which cannot be impaired by subsequent action of the state or an arm of the state. The Dartmouth College case, Trustees of Dartmouth College v. Woodward, 4 Wheat 518, 4 L.Ed. 629, which is familiar to all students of constitutional law, is cited on this point.

Blue Motor also points to the provision in KRS 281.635(1) that no franchise shall be issued by a city without a prior finding by the Motor Transportation Department that there is a demand and necessity for the service sought to be rendered, and insists that in the absence of such certificate, Transit cannot, under any circumstances, properly extend its service into the Camp Taylor area. Transit admits, of course, that it did not obtain from the Department a certificate of convenience and necessity prior to the extension of its service.

It may be conceded that each of the theories presented in this case is a sound and logical principle of law when considered in the abstract. It is apparent, however, that both theories cannot have full application here. If each theory is projected to its logical conclusion the result, when applied to the facts of this case, is a "dead heat" so to speak, with a finding that both companies are entitled to maintain service in the Camp Taylor area. That, in effect,

is what the Commissioner of Motor Transportation held, but this result would not be advantageous to the public or satisfactory to either of the companies. Consequently, we are faced not so much with the task of deciding which of the companies is right, but which of them has the superior right.

We think the rights of Transit are superior. Its rights come not only from the statutes, but from the Constitution. Conceding for the purpose of this discussion that the certificate which Blue Motor holds from the state has some of the attributes of a property right, that right is neither absolute nor irrevocable. Of some significance is the fact that the certificate must be renewed from year to year. Moreover, the original certificate was issued under a statute which was enacted subject to the constitutional provision which gives cities the final right to grant or to withhold permission to a utility to render an intra-city service using or occupying the city streets. At the time the original certificate was issued to Blue Motor the annexation statute was in effect and even at that time there was a reasonable probability that the city would sometime in the future annex the Camp Taylor area. Hence, Blue Motor's certificate was issued subject to that contingency. When the area was annexed by the city it thereby was removed for most purposes from the jurisdiction of the state and was placed within the jurisdiction of the city. It follows that the rights of Blue Motor, which were derived from the state, must give way to the rights of Transit, which were derived from the city. It is pointed out by Blue Motor that a city is merely an arm of the state and that the city cannot do what the state itself cannot do. But that rule is not applicable here. The right of a city to control the letting of franchises to intra-city utilities is derived from the Constitution and to that extent the authority of the city is superior to that of the state.

The "grandfather" statute neither added to nor detracted from the rights of either company. That statute merely retained in status quo those rights which existed prior to December 31, 1949 by virtue of the old type certificates. Since Blue Motor had no authority to maintain intra-city bus service prior to December 31, 1949, the Department of Motor Transportation could not under authority of the "grandfather" statute confer such rights upon it.

If we were to uphold the right of Blue Motor to render bus service within the city limits of Louisville without first obtaining a franchise from the city, we would be in the anomalous position of approving something which is expressly prohibited by sections 163 and 164 of the Constitution. Not only that, but we would at least be required to modify the language used in People's Transit Co. v. Louisville Railway Co., and Truesdale v. City of Newport, referred to above. While the identical question with which we are now concerned was not before the court in those cases, we think the language of the opinions supports in principle Transit's position.

It is argued by Blue Motor that the hearing notice issued by the Department of Motor Transportation did not include the question of Blue Motor's right to render intra-city service, and that issue should not have been decided by the Department. We find from the preliminary proceedings before the Department's examiner that there was at least an implied consent, if not an express agreement, that the purpose of the hearing was to determine the respective rights of both carriers to operate in the Camp Taylor area. The examiner so stated the issue at the commencement of the hearing and Blue Motor having acquiesced in that statement may not now complain of a defect in the hearing notice.

The contention that rights guaranteed to Blue Motor by the Federal Constitution have been violated has been considered and found not to be sustainable.

The judgment is affirmed.