[No. 7457. Decided July 29, 1908.]

MILES P. BENTON et al., Appellants, v. SEATTLE ELECTRIC COMPANY, Respondent.[1]

MUNICIPAL CORPORATIONS—CITY COUNCIL. The "legislative authority" of a city, as used in the constitution and statutes of this state, means the mayor and city council.

SAME—CHARTER—AMENDMENTS — LIMITATION BY GENERAL LAWS. The power to amend a city charter, under the direct amendment act, Laws 1903, p. 393, authorizing the submission of amendments to a vote of the people, is limited to the extent that amendments cannot be adopted that override a general statute of the legislature which deals directly and specifically with the subject in question.

[1]Reported in 96 Pac. 1033.

STREET RAILROADS—FRANCHISE — VALIDITY — MUNICIPAL CORPORATIONS—CITY COUNCIL—POWERS. Laws 1903, p. 364, vests in the legislative authority of the city, i. e., its mayor and council, the power of granting street railway franchises, and a franchise is valid without submission of the same to a vote of the people.

SAME—AMENDMENTS TO CHARTER. The amendment to the Seattle city charter, art. 4, § 20, which required an ordinance granting a street railway franchise to be submitted to a vote of the people, is void, since the legislature by Laws 1903, p. 364, vested in the legislative authority of the city the power of granting street railway franchises; hence an ordinance granting a franchise without the restrictions imposed by such amendment is valid.

Appeal from a judgment of the superior court for King county, Morris, J., entered June 16, 1908, upon sustaining a demurrer to the complaint, dismissing an action to annul a street railway franchise. Affirmed.

*Wardall & Wardall*, for appellants.
*James B. Howe*, for respondent.

ROOT, J.—On the 29th of April, 1908, the Seattle Electric Company, a corporation operating a street car system in the city of Seattle, made application to the council of that city for a franchise to construct, maintain, and operate a street railway upon certain parts of Alki avenue, 63d avenue southwest, and other streets, avenues, and places in that city. On the 1st of June, 1908, the city council passed an ordinance granting such franchise, and the same was approved by the mayor on June 5, 1908. This ordinance complied in all respects with the charter of the city of Seattle as the same existed prior to and up to the time of the adoption of the amendments to such charter made at the municipal election in March, 1908. On account of it not complying with these amendments, this action was prosecuted by the plaintiffs, who are residents, property holders, and taxpayers within said city, to enjoin the city officers from authorizing the construction of said railway under said franchise, or recognizing any franchise as being granted, and for a decree declaring such attempted franchise to be null and void. A demurrer to the

complaint was sustained, and the plaintiffs electing to stand upon their demurrer, a judgment of dismissal was entered, from which this appeal is prosecuted.

Section 20 of art. 4 of the city charter, as amended at the election in March 1908, contains the following:

"Every grant of a franchise, right or privilege shall be subject to the right of the city council, or the people of the city acting for themselves by the initiative and referendum, at any time subsequent to the grant, to repeal, amend or modify the said grant with due regard to the rights of the grantee and the interest of the public; and to cancel, forfeit and abrogate any such grant if the franchise granted thereby is not operated in full accordance with its provisions, or at all; and at any time during the grant to acquire, by purchase or condemnation, for the use of the city itself, all the property of the grantee within the limits of the public streets, at a fair and just value, which shall not include any valuation of the franchise itself, which shall thereupon terminate; and every ordinance making any such grant shall contain a reservation of these rights of the city council, and of the people of the city acting for themselves by the initiative and referendum, to so repeal, amend or modify said ordinance, and to so cancel, forfeit and abrogate the grant, and to so acquire the property of the grantee in the public streets, as hereinabove set forth. The city council shall not consider or grant any application for extension of the period of any franchise, nor any new franchise covering all or any substantial part of the rights or privileges of any existing franchise, until within three years of the expiration of the existing grant, and then only after submission to and approval by majority vote of the qualified electors. . . . The proposed franchise shall further contain all other reservations and limitations set forth in this charter and the laws of the state. . . . If the proposed franchise ordinance receives in its favor a majority of all the votes cast for and against the same, it shall be deemed to be ratified and the city council may thereupon finally pass and adopt the same. If it fail to receive said majority in its favor, the franchise ordinance shall be deemed rejected and no further proceedings shall be had thereunder. The same methods of procedure shall obtain in the extension of any existing fran-

chises, or any rights thereunder, as in the grant of a new franchise. No street railway franchise shall in any event be granted, extended or renewed to any date beyond December 31st, 1934." Seattle Charter (Revised Ed. 1908), art. 4, § 20.

Section 1 of art. 4 of the charter of the city of Seattle, as amended at the election in March, 1908, contains the following:

"The legislative powers of the city of Seattle shall be vested in a mayor and city council, who shall have such powers as are provided for by this charter; but the power to propose for themselves any ordinance dealing with any matter within the realm of local affairs or municipal business, and to enact or reject the same at the polls, independent of the mayor and city council, is also reserved by the people of the city of Seattle and provision made for the exercise of such reserved power; and there is further reserved by and provision made for the exercise by the people of Seattle of the power, at their own option, to require submission to the vote of the qualified electors, and thereby to approve or reject at the polls any ordinance, or any section, item or part of any ordinance dealing with any matter within the realm of local affairs or municipal business, which may have passed the city council and mayor, acting in the usual prescribed manner as the ordinary legislative authority."

The amendments to the charter voted on in March, 1908, were made pursuant to "An act providing for the direct amendment of city charters with respect to local affairs," approved March 21, 1903, commonly known as the "direct amendment act." Laws 1903, p. 393. It is conceded by respondent that, if the amendment adopted by the people at the election in March, 1908, constitutes a valid portion of the charter of the city, then the franchise is invalid, and the demurrer should have been overruled; and it is conceded by appellants that, if said charter amendment is invalid, then the ordinance is legal and the demurrer was properly sustained. Respondent makes the following contentions:

"The legislature of the state having enacted a general law granting to the legislative authority of cities the authority

to authorize the construction, maintenance and operation of street railways and electric railways upon the streets of cities and to prescribe the terms and conditions of such construction and operation, the attempted amendment of the charter of the city, so as to impair, surrender and abrogate such authority is illegal..

"The attempted amendment of the charter, being in conflict with a general law of the state upon the particular subject of electric railways, is invalid.

"The abrogation of the power of the city to grant franchises which would have any effect after December 31, 1934, being a void attempt to surrender a power conferred by the legislature, and such abrogation being the inducement for the adoption of the amendment, the whole amendment is void.

"The attempted amendment, having been adopted pursuant to the provisions of the direct amendment act of 1903, and the method prescribed in that act being in conflict with the constitution of the state, the attempted amendment is void.

"The franchise amendment being complete within itself, and having its own provision in regard to a referendum, and being void, the separate amendment providing for the initiative and referendum has no application to franchises."

The legislature of 1903 pa sed a law relating to electric railroads, street and other electric railways (Laws 1903, page 364), wherein it provided as follows:

"Sec. 1.   The legislative authority of the city or town having control of any public street or road, or, where such street or road is not within the limits of any incorporated city or town, then the board of county commissioners of the county wherein such road or street is situated, may grant authority for the construction, maintenance and operation of electric railroads or railways, together with such poles, wires and other appurtenances, upon, over, along and across any such public street or road, and in granting such authority the legislative authority of such city or town, or the board of county commissioners, as the case may be, may prescribe the terms and conditions on which such electric railroad or railway, and its appurtenances shall be constructed, maintained and operated upon, over, along and across such road or street, and the grade or elevation at which the same shall be con-

structed, maintained and operated. . . All acts and parts of acts in conflict with this act are hereby repealed."

In 1907 this statute was amended in certain particulars. Laws 1907, p. 192. It is the contention of the respondent that the statute under which the charter amendments were made does not authorize any amendment which would conflict with the statute of 1903, and the same as amended in 1907, relating to "electric railroads, street and other electric railways." These latter statutes vest in the "legislative authority" of the city power to prescribe the terms and conditions upon which electric railroads and railways may be constructed, operated, and maintained. It is maintained that the expression "legislative authority of the city" means the mayor and city council. This contention is doubtless correct. That expression as used in § 10, art. 11, of the state constitution and in numerous statutes of the legislature, undoubtedly means the mayor and council of the city. Bal. Code, § 740 (P. C. § 3733).

The question is then squarely presented as to whether the statute of 1903, and as amended by the statute of 1907, limits the powers granted by the statute of 1903 known as the "direct amendment statute." It is urged by respondent that the last-mentioned statute is thus affected and that, under the well-established rule that a general must give way to a special statute and a former to a latter, it follows that the direct amendment statute must give way, in so far as its provisions are contravened or limited by those of the statutes referring directly to street railways, one of which was enacted subsequent to the direct amendment statute. We think this contention must be upheld. While the direct amendment statute vests power in the city to amend its charter, yet this cannot be construed to mean that the charter can be so amended as to override a statute of the legislature which was intended to and does deal directly and specifically with the subject-matter in question. In the case of *Tacoma Gas*

11—50 WASH.

*& Elec. L. Co. v. Tacoma,* 14 Wash. 288, 44 Pac. 655, this court said:

"It is a well-settled rule of construction that a delegation of powers will not be presumed in favor of a municipal corporation, unless they be such as are necessary to its corporate existence, but that the same must be clearly conferred by express statutory enactment. . . . It is sufficient to say, however, that the legislature having passed a general law upon the particular subject, the power to fix such rates must be found therein, if at all."

In the case of *Hindman v. Boyd,* 42 Wash. 17, 84 Pac. 609, this language was used:

"It is the evident policy of the state constitution that the charters of cities of the first class and amendments thereto shall be subject to the control of general laws. Const. art. 11, § 10. The power is vested in the people to adopt their own charter, and also to amend it; but the matter is subject to the control of general laws."

See, also, *Tacoma Land Co. v. Pierce County,* 1 Wash. 482, 25 Pac. 904; *Meade v. French,* 4 Wash. 11, 29 Pac. 833; *Seattle & Montana R. Co. v. O'Meara,* 4 Wash. 17, 29 Pac. 835; *Olympia Water Works v. Thurston County,* 14 Wash. 268, 44 Pac. 267; *Pierce County ex rel. Maloney v. Spike,* 19 Wash. 652, 54 Pac. 44; *Callvert v. Winsor,* 26 Wash. 368, 67 Pac. 91.

It is insisted by respondent that the mayor and city council, as the legislative authority of the city, having been vested by the legislature with power to control the construction, operation, and maintenance of street railways, cannot delegate nor surrender that power to the voters or others. In the case of *State ex rel. Spokane & B. C. Tel. Co. v. Spokane,* 24 Wash. 53, 63 Pac. 1116, this court said:

"The volition to consent or refuse is one of the powers vested by the legislature in cities of the first class, and this continuing power cannot be diverted without the sanction of the legislature."

McQuillan, Municipal Ordinances, p. 128, states the law thus:

"The principle is fundamental and of universal application, that public powers conferred upon a municipal corporation and its officers and agents cannot be surrendered or delegated to others."

See, also, *Palmer v. Laberee*, 23 Wash. 409, 63 Pac. 216; *Mayor etc. of Baltimore v. Flack*, 104 Md. 107, 64 Atl. 702; *Attorney General v. Lowell*, 67 N. H. 198, 38 Atl. 270; *Vandalia R. Co. v. State*, 166 Ind. 219, 76 N. E. 980, 117 Am. St. 370; 20 Am. & Eng. Ency. Law (2d ed.), 1142; 4 Supp. to Ency. of Law, p. 95; 1 Dillon, Mun. Corp., 421; *Employers' Liability Cases*, 207 U. S. 463, 28 Sup. Ct. 141.

This case is clearly distinguishable from that of *Hindman v. Boyd, supra,* wherein a charter amendment, adopted by the voters of the city, involved a gas franchise, there being no special statute of the legislature vesting the power over such matters directly and specifically in the "legislative authority" of the city as is the fact in the case at bar. We think that, under the statutes of the state, the city council was without authority to submit to the voters for their ratification any ordinance granting a franchise for a street railway company, inasmuch as the power of granting franchises of this kind is vested directly and specifically by the legislature in the legislative authority of the city; that is, in the mayor and city council. For these reasons the ordinance granting the franchise involved in this action was legal and valid, and it was not necessary nor proper that it should have been submitted to the voters. Neither was it necessary to embody the restrictions and limitations provided for in said charter amendments adopted at the municipal election in March, 1908.

Finding no error in the judgment of the superior court, the same is affirmed.

HADLEY, C. J., DUNBAR, CROW, and MOUNT, JJ., concur.