STATE, Appellant, vs. KING, Respondent.

*June 4—June 20, 1952.*

For the appellant there were briefs by the *Attorney General* and *William A. Platz,* assistant attorney general, and *Richard W. Bardwell,* district attorney of Dane county, and *Roland B. Day,* deputy district attorney, and oral argument by *Mr. Platz, Mr. Bardwell,* and *Mr. Day.*

For the respondent there was a brief by *Darrell MacIntyre,* attorney, and *Gustav B. Husting* and *Donald W. Kaatz* of counsel, all of Madison, and oral argument by *Mr. MacIntyre* and *Mr. Kaatz.*

GEHL, J.  The defendant has moved for dismissal of the appeal upon the ground that reversal would require a new trial as a result of which there would be double jeopardy, a violation of the Wisconsin constitutional provision that "no person for the same offense shall be put twice in jeopardy of punishment." Sec. 8, art. 1, Const.

The state contends that it is given the right to an appeal by the provisions of sec. 358.12, Stats., which are as follows:

"(1) A writ of error or appeal may be taken by the state from any: . . .

"(d) Judgment adverse to the state, upon questions of law arising upon the trial, with the permission of the trial judge, in the same manner and with the same effect as if taken by the defendant. A judgment acquitting the defendant of all or part of the charge shall be deemed adverse to the state."

The evils sought to be obviated by the constitutional provision against double jeopardy are very real. They were recognized as real even at the common law, long before it was considered important, in order that citizens might be protected against any effort on the part of the state to try and retry an alleged offender until conviction be had, to include the inhibition in the written fundamental law. 15 Am. Jur., Criminal Law, p. 38, sec. 359; *Kepner v. United States,* 195 U. S. 100, 24 Sup. Ct. 797, 49 L. Ed. 114.

This court has taken a tolerant view as to the meaning of jeopardy. It has sustained the validity of the statute which grants to the state, under certain circumstances, the right to appeal from a judgment of acquittal and thereby exposes an alleged offender to what, in the view of some of the courts, amounts to double jeopardy. *State v. Witte,* 243 Wis. 423,

10 N. W. (2d) 117. In sustaining the validity of the statute it represents the minority view, Anno. 157 A. L. R. 1066, *State v. Evjue,* 254 Wis. 581, 37 N. W. (2d) 50.

It has indicated, however, that there are certain limits beyond which its liberal doctrine should not and cannot be justly carried. Evidence that it has not completely abandoned the safeguards provided by the constitutional provision and that as construed by it the statute does not render them nugatory is found in *State v. Evjue, supra,* page 593. In that case defendant, the publisher of a newspaper, was charged with the publication of an article in violation of sec. 348.412, Stats. Trial by jury was waived and, upon undisputed evidence of guilt, the court found him not guilty. After obtaining permission of the trial judge the state took its writ of error under sec. 358.12 (8), Stats. 1947. This court, although it was compelled to say that, were it in a position to view the merits, it "would be required to hold that . . . defendant's guilt was established in fact and in law," denied the writ and thus reserved to the defendant the right to be tried only once for the same offense.

The court has also recognized and declared that in situations in which the statute would otherwise be applicable and would authorize an appeal from a judgment of acquittal, once the defendant has been fully tried, acquitted, and discharged, he may not be returned for a second trial.

"It is unfair to the defendant to permit him to leave the courtroom assuming that his case is finally disposed of and then be informed sometime later that his case is to be reviewed and that he is subject to the jurisdiction of the court even though he had previously been discharged." *State v. Witte, supra* (p. 432).

In *State v. Flanagan,* 249 Wis. 521, 522, 25 N. W. (2d) 111, we again stated that the prosecutor's application for permission to appeal should be made "either prior to or contemporaneous with the entry of a final judgment of acquittal."

· The state contends, however, that the rule of *State v. McNitt,* 244 Wis. 1, 11 N. W. (2d) 671, is applicable. In that case, which was tried in Milwaukee county without a jury, the judge took the matter under advisement and some time after the trial, at Marinette, signed a decision finding defendants not guilty and an order discharging them. The decision and order were sent to the clerk of court at Milwaukee. There was therefore no opportunity before or at the time of entry of judgment for the state to apply for permission to appeal; it was impossible for the state to follow the procedure outlined in *State v. Witte, supra.* We said that the state must be given such opportunity. That was not the situation in this case, as we shall point out.

Out of these cases we read the rule that under the circumstances stated in the statute and under its provisions which have been held to be valid, the state may with the permission of the presiding judge take a writ of error or appeal. Application for such permission, if opportunity therefor is given him, must be made by the prosecutor promptly and before the defendant, having been put in jeopardy, has been discharged.

Did the prosecutor have opportunity to act timely? On June 10, 1950, at 9:18 p. m., counsel present, the jury returned its verdict. The jurors were discharged and the court made the following pronouncement:

"Mr. George King, the court commits you to the Central State Hospital until discharged in accordance with law. The defendant is placed in the custody of the sheriff."

On the next day, a Sunday, the judge left the city of Madison and was unavailable for some time. On July 10, 1950, the district attorney's application was heard. This appears to be his first opportunity after June 10th to be heard.

From his affidavit filed in opposition to defendant's motion for dismissal of the appeal it appears that as early as May 22, 1950, during the course of the trial, the district attorney

considered that in case of acquittal he would appeal and so advised the court. He may not be heard to say that the thought of appealing first occurred to him when the verdict was returned.

He states in his affidavit that after verdict on June 10th the judge left the bench without affording him opportunity to make a motion for leave to appeal. Nothing in the record indicates that the judge left so hurriedly as not to permit the prosecutor to utter the few words required to present his application. We may not assume that a judge would so neglect his duty as to deny counsel the right and opportunity to be heard upon a matter which would consume so little in time. The district attorney's bare statement that he was not given opportunity, which finds no support in the record, is but a conclusion, and does not disclose that he made any effort to that end, does not permit us to make such assumption. The facts are not similar to those in *State v. McNitt,* *supra,* where it appeared clearly that no opportunity whatever was given to the state to present its application to the trial judge.

Was the defendant discharged on June 10, 1950? He was acquitted by the jury of the offense with which he was charged. The verdict disposed of every issue in the case and put an end to the prosecution. The court's order of commitment was an approval of the verdict, an act consistent with it and inconsistent with anything else. It was not a sentence but was a commitment without definite term. The defendant could not have been so committed without the court's acceptance of the "not guilty" feature of the verdict. But for the finding of insanity at the time of the offense he would have been free to leave the courtroom. He was a free man, as free as though he had been acquitted without any inquiry as to his mental condition. That he was found to have been insane does not alter the fact that the prosecution had been completed. True, he was detained; but not for the purpose

of participating further in any proceeding having to do with the alleged offense.

The court's pronouncement upon receipt of the verdict, the only one possible under the circumstances, was a judicial determination of the fact of defendant's acquittal. His commitment to the Central State Hospital was not made to render him available for further participation in the trial or for possible retrial; it was ordered solely for observation or treatment until he might be released with safety from all restraint as having recovered from his condition of insanity. Sec. 357.11 (3), (4), Stats.

To demonstrate the fallacy of the contention that for the purposes of this trial defendant was not discharged when he was committed to the Central State Hospital—suppose that the issue of insanity had not appeared in the case, the sheriff had stood by with a warrant for defendant's arrest upon a complaint charging another offense, the jury had acquitted, the court had ordered defendant's discharge, and immediately in the courtroom the sheriff had served the warrant and taken him into custody—would it be claimed that because he was still in the courtroom he had not been discharged? What is the difference between that situation and this? Or should we say that the constitutional provision and the statute granting the state the right to appeal should be construed differently in the case of a person found to have been insane at the time of the offense than in the case where the issue of insanity is not involved? There is no reason in logic for such distinction. It should not be necessary to cite authorities in support of the statement that a person acquitted upon the ground of insanity existing at the time of commission of the act is entitled to all of the protection of constitutional rights as if acquitted upon any other ground.

The attorney general has called to our attention a number of errors alleged to have been committed by the trial court and has referred to certain conduct of counsel for defendant

upon the trial which he asserts produced a miscarriage of justice in this case. His argument, particularly that addressed to the conduct of defense counsel, appears to us to have some basis. It is true, as he contends, that whether there be conviction or acquittal the verdict or finding should be the result of orderly procedure.

This right of the state is not, however, of greater import than is the ancient right, now recognized in practically every written constitution, of a person charged with crime to insist that he be required to stand only once for the determination of his guilt or innocence. A fundamental principle may not be brushed aside, even at the expense of the possibility that in a particular case a guilty person may be allowed to avoid punishment for his offense. That such is the position of this court appears from its conclusion in the *Evjue Case, supra.*

If and when it appears to the people that a constitutional inhibition or restraint is objectionable or that changed social, economic, or political conditions require departure from what has been considered to be necessary for the protection and preservation of formerly recognized rights or the imposition of new obligations the means of eliminating or adding are adequately provided by the constitution itself. The refusal of the court to usurp the power reserved to the people themselves to amend the fundamental law does not place the people nor their representatives in a strait jacket, helpless to adapt the law to their needs or wishes.

The fact that time may be consumed and delay, possibly costly, may result from the necessity for permitting the people to exercise their exclusive right to amend the constitution or that there may in some instances be other considerations of expediency which would suggest unauthorized action by the court, does not permit us to arrogate to ourselves that power. The results of orderly procedure, if they appear to be objectionable, can easily be obviated if the people find it necessary or desirable to submit to the consequences of their

elimination. The heads of dictatorial governments have not been hampered in that regard. Until the people express a willingness to submit to the evils of that form of government the court should confine its operations and activities to those delegated to it, and in compliance with the oaths of its members, so function as to aid them in the preservation of the rights and the limitations expressed in the constitution.

*By the Court.*—Appeal dismissed.

FAIRCHILD, J., took no part.