[No. 34546. *En Banc.* February 28, 1958.]

G. W. BURNS, *Appellant*, v. JOE K. ALDERSON *et al.*, *Respondents.*[1]

[1] Reported in 322 P. (2d) 359.

*Foster & Foster*, for appellant.

*Hawkins & Loy*, for respondents.

*L. B. & Max Vincent, D. V. Morthland, Gavin, Robinson & Kendrick, Robert R. Redman, Halverson, Applegate & McDonald, Donald H. Brazier, Jr.*, and *Robert I. Bounds*, amici curiae.

FOSTER, J.—We reverse the dismissal of this declaratory judgment action (RCW chapter 7.24) challenging the validity of the Yakima election at which an amendment to the city charter adopting the council-manager form of city government was approved, because the law, both constitutional and statutory, requiring publication thereof was ignored.

Article XI, § 10 of the Washington constitution, so far as material, is as follows:

"Said proposed charter shall be published in two daily newspapers published in said city, for at least thirty days prior to the day of submitting the same to the electors for their approval, as above provided."

RCW 35.22.170 is as follows:

"The proposed new, altered or revised charter shall be published in two daily newspapers in the city for at least thirty days prior to the day of election thereon for adoption or rejection."

By unchallenged findings, it appears that on February 14, 1956, the Yakima city commission, by resolution, decided to submit to the voters of that city a proposition to amend the city charter by adopting the council-manager form of government. Newspaper publication of notice of the election for that purpose was first made on the day following, February 15, 1956, in the two Yakima daily newspapers. The

municipal election was held March 13, 1956, so it is conclusively established that there was no publication of the proposed charter amendment for "at least thirty days prior to the day of election" as required by both the constitution and statute. The election was held twenty-seven days following the first publication. The proposition was carried by 7,451 affirmative votes to 3,803 votes against.

Yakima is a first-class city as defined by statute.

The trial court's memorandum opinion recognized that the constitutional publication requirement controlled, even though the charter amendment was proposed by the initiative device sanctioned by Laws of 1903, chapter 186, p. 393 (RCW 35.22.120).

The trial court was of the opinion that the constitutional publication requirement of the proposed amendment in two newspapers for a period of thirty days was procedural, that substantial compliance only was required, and that the voters of Yakima had actual knowledge thereof by other means of communication, which, in the view of the trial court, was more effective than the constitutional device.

■ It may very well be that actual notice is more effective device sanctioned by Laws of 1903, chapter 186, p. 393 constitution might well be amended to provide for that sort of notice, but until it is so amended, this court is bound by the constitution, and we are not at liberty to substitute some other device which might be considered more effective.

The constitution itself declares:

"The provisions of this Constitution are mandatory, *unless by express words they are declared to be otherwise.*" (Italics ours.) Art. I. § 29, Washington State Constitution.

In both *Wade v. Tacoma*, 4 Wash. 85, 29 Pac. 983, and *State ex rel. Linn v. Superior Court*, 20 Wn. (2d) 138, 146 P. (2d) 543, we said in unmistakable terms that the constitutional requirement above quoted was mandatory, and that it could not be circumvented. The constitution has not since been amended, and the judgment must, therefore, be reversed.

Three of the five judges of this court in *Wade v. Tacoma, supra,* Dunbar, Stiles, and Hoyt, were members of the constitutional convention which only three years before framed the constitution. Moreover, Judge Hoyt was president of the convention. The pronouncements of that court on this question, therefore, have more than ordinary significance.

Counsel for the respondent argues that no publication of the proposed amendment is required by Laws of 1903, chapter 186, but this overlooks entirely Laws of 1895, chapter 27, § 3, p. 42, set out in the margin,[2] which requires precisely the same publication as is prescribed in the constitution.

There was no occasion in the act of 1903 to deal with the question of publication, because that matter was already adequately covered by existing statutes. Laws of 1895, chapter 27, § 3, has existed continuously since and was last re-enacted by Laws of 1925, Ex. Ses., chapter 137, § 3, p. 345.

1 Ballinger's Annotated Codes and Statutes of Washington (1897) carried the section as § 765. It is found in 2 Remington's and Ballinger's Annotated Codes and Statutes of Washington (1910) as § 7500. In 3 Remington's Compiled Statutes of 1922 and in Remington's Revised Statutes of 1932, it is found as § 8957. It has never been repealed.

The argument that under the act of 1903 there is no publication requirement at all is without foundation. The legislature has never deviated from the constitutional requirement.

We are told that the publication requirement of Art. XI, § 10 of the Washington constitution does not apply to charter amendments by the initiative device because that was unknown at the time of the adoption of the constitution in 1889. This argument was specifically rejected in *State ex rel. Linn v. Superior Court, supra.* We there said:

"It is difficult to imagine a more comprehensive phrase than 'legislative authority,' and we are of the opinion that

_____

[2]"Such proposed charter shall be published in two daily newspapers in said city for at least thirty days prior to the day of submitting the same to the electors for their approval as in section two hereof provided."

the framers of the constitution intended to use a term so broad as to cover all classes of legislative bodies functioning in cities, whether then in operation or to be put in operation in the future."

■ Changed economic conditions or developments do not amend the constitution. *Straughan v. Coeur D'Alene*, 53 Idaho 494, 24 P. (2d) 321; *Louisville v. Presbyterian Orphans Home Society*, 299 Ky. 566, 186 S. W. (2d) 194; *State ex rel. Bruestle v. Rich*, 159 Ohio St. 13, 110 N. E. (2d) 778; *State v. King*, 262 Wis. 193, 54 N. W. (2d) 181.

If the argument were valid that the constitution applied only to forms extant at the time of its adoption, the commerce clause of the Federal constitution would not authorize Congress to regulate any of the modern means of communication.

The late Chief Justice Harlan Fiske Stone, when Mr. Justice Stone, spoke for the court in *United States v. Classic*, 313 U. S. 299, 315, 85 L. Ed. 1368, 61 S. Ct. 1031, as follows:

"We may assume that the framers of the Constitution in adopting that section, did not have specifically in mind the selection and elimination of candidates for Congress by the direct primary any more than they contemplated the application of the commerce clause to interstate telephone, telegraph and wireless communication, which are concededly within it. But in determining whether a provision of the Constitution applies to a new subject matter, it is of little significance that it is one with which the framers were not familiar. For in setting up an enduring framework of government they undertook to carry out for the indefinite future and in all the vicissitudes of the changing affairs of men, those fundamental purposes which the instrument itself discloses. Hence we read its words, not as we read legislative codes which are subject to continuous revision with the changing course of events, but as the revelation of the great purposes which were intended to be achieved by the Constitution as a continuing instrument of government. Cf. *Davidson v. New Orleans*, 96 U. S. 97; *Brown v. Walker*, 161 U. S. 591, 595; *Robertson v. Baldwin*, 165 U. S. 275, 281, 282."

■ Both the constitution and statutes require at least thirty days' newspaper publication of a proposed charter

amendment prior to the election at which it is submitted to the voters. Nothing less will suffice. Admittedly, such publication was not had in this case.

The judgment is reversed, and the cause remanded for the entry of a judgment in accordance with the views herein expressed.

HILL, C. J., DONWORTH, ROSELLINI, and WEAVER, JJ., concur.

OTT, J. (dissenting)—I dissent for two reasons: First, there are four methods by which a city of the first class may amend its charter. Two of these methods are defined in the constitution. A third method is established by Laws of 1895, chapter 27, p. 42, as amended by Laws of 1925, Ex. Ses., chapter 137, p. 344. A fourth method is that provided by Laws of 1903, chapter 186, p. 393, as amended by Laws of 1949, chapter 233, p. 868 (hereinafter referred to as the act of 1903). The 1903 act for the first time established a direct or initiative procedure which the legislature expressly provided should be a concurrent and additional method.

The published notice requirements in Art. XI, § 10, of the constitution, and in Laws of 1895, chapter 27, § 3, p. 43, as amended by Laws of 1925, Ex. Ses., chapter 137, § 3, p. 345 (hereinafter referred to as RCW 35.22.170), are not a part of or applicable to the "concurrent and additional" method established by the act of 1903.

Secondly, even if we were to engage in "judicial legislation," by judicially amending the act of 1903 to include the notice requirement of RCW 35.22.170, the notice which was given in the instant case was substantial compliance with the "judicial enactment."

The majority opinion states:

"Counsel for the respondent argues that no publication of the proposed amendment is required by Laws of 1903, chapter 186, but this overlooks entirely Laws of 1895, chapter 27, § 3 [RCW 35.22.170], . . . which requires precisely the same publication as is prescribed in the constitution."

The majority disregard the fact that there are four methods by which a city charter amendment may be accomplished. Because the legislature required a published notice in the 1895 method, and the framers of the constitution provided for a published notice in the two constitutional methods, the majority decide that the only acceptable notice is one that is published.

In 1903, the legislature determined that, when a city charter amendment is initiated by fifteen per cent of the people who voted at the last general state election, a published notice is not required. This determination was solely within the discretion of the legislature. Nor is there any merit in the contention of the majority that the notice required in the other three methods was, by inference, included in the method established by the act of 1903, for the reason that, in 1949, the legislature again considered the 1903 act and amended it (in a particular not material here), but still did not see fit to require a published notice.

Chapter 137, Laws of 1925, Ex. Ses. (of which RCW 35-.22.170 is a part), amended the 1895 act *only* and made no reference whatsoever to the 1903 act. By the statement above quoted, the majority infer that RCW 35.22.170 was enacted as a part of the 1903 act, when the fact is that it is a part of the 1895 act *only* (as amended by the 1925 act).

In deference to the majority's conclusion in this regard, it may be that they are relying upon the doctrine of *pari materia,* by which prior statutes dealing with the same subject matter may be resorted to in order to resolve ambiguities. This doctrine has no application here.

"The rule of in pari materia does not permit the use of a previous statute to control by way of former policy the plain language of subsequent statutes, or to add a restriction thereto found in the earlier statute and excluded from the later statute; *nor has the rule any application in construing an act intended to be complete in itself.* In other words, the rule of construction may not be applied to narrow the compass of one statute by reference to another *nonconflicting and nonrepealing act,* and restrictions placed on a power in one instance cannot be extended to another case

for which they were not intended and for which another provision is made." (Italics mine.) 82 C. J. S. 814, § 366.

Since the provisions of RCW 35.22.170 apply only to the 1895 act, and the doctrine of *pari materia* is not applicable, the majority's position can be sustained only by "judicial legislation." We have repeatedly held that we will leave the matter of legislation to that branch of the government whose duty it is to legislate. *Fix v. Fix,* 33 Wn. (2d) 229, 231, 204 P. (2d) 1066 (1949); *Eggert v. Ford,* 21 Wn. (2d) 152, 160, 150 P. (2d) 719 (1944).

In the instant case, all of the provisions of the act of 1903 with reference to procedure and notice were complied with fully. The majority do not hold that the act of 1903 is unconstitutional. They reverse upon the single ground that the published notice was three days short of the notice requirements for the methods provided by the constitution and by the act of 1895, as amended by Laws of 1925, Ex. Ses.

I cannot agree with the majority's contention that the adoption of the charter amendment was void because of the failure to meet the constitutional requirement relating to the publishing of the proposed amendment, and the publication requirement of the act of 1895, as amended by the 1925 act.

I agree with the majority that the constitutional requirements with reference to notice are mandatory. The mandatory provisions, however, are applicable only when a city charter is to be amended by either of the constitutional methods. Likewise, the published notice requirement of RCW 35.22.170 is applicable only to the additional method established by Laws of 1895, as amended by the 1925 act. The people of Yakima, in attempting to amend their charter, admittedly did not pursue either of the constitutional methods or that provided by the act of 1895, but followed precisely the method provided in the act of 1903.

The constitution does not preclude the legislature from providing other methods of amending municipal charters. The constitution provides that "Such charter *may* be amended by proposals therefor submitted by the legislative

authority of such city." (Italics mine.) The word "may" is inconsistent with an intent that the method provided by the constitution shall be *exclusive*. Art. I, § 30, provides that "The enumeration in this Constitution of certain rights shall not be construed to deny others retained by the people."

We have often held that the state constitution is a limitation upon, rather than a grant of, power. *State ex rel. O'Connell v. Meyers, ante* p. 454, 465, 319 P. (2d) 828 (1957), and cases cited. The power of the legislature to enact laws is unrestrained, unless, expressly or by fair inference, it is prohibited by the state or Federal constitution. *Gruen v. State Tax Commission*, 35 Wn. (2d) 1, 7, 211 P. (2d) 651 (1949); *State ex rel. New Washington Oyster Co. v. Meakim*, 34 Wn. (2d) 131, 138, 208 P. (2d) 628 (1949); *Union High School Dist. No. 1 v. Taxpayers of Union High School Dist. No. 1*, 26 Wn. (2d) 1, 6, 172 P. (2d) 591 (1946); *Sears v. Western Thrift Stores of Olympia*, 10 Wn. (2d) 372, 116 P. (2d) 756 (1941).

The intent of the legislature to provide an additional method is clearly expressed in the act of 1903, § 3, p. 394, as follows:

"This act shall not be construed to deprive city councils from submitting proposed charter amendments to the voters as is now provided, but shall be held to afford a *concurrent and additional method* for proposing and submitting amendments to the charter of any municipality having a charter." (Italics mine.)

The act of 1903 is a complete legislative enactment of an additional method by which a change in municipal government can be brought about by the electorate. The act of 1903 does not provide for a published notice such as is specifically provided by the three other methods. However, it does provide that notice be given as follows:

(1) The petition must be signed by a number equal to fifteen per cent of the total number of votes cast within the city at the last preceding general state election. These signers had notice of the proposal, as well as numerous others who had been solicited.

(2) The petition must be filed as a public record in the office of the clerk. The filing of such a document in a public office is notice to all the voters. *Dowgialla v. Knevage*, 48 Wn. (2d) 326, 335, 294 P. (2d) 393 (1956).

(3) The amendment can be voted upon only at a *regular municipal election*. The election laws require the city clerk to publish notice of all matters to be submitted to the electorate. RCW 29.27.060 [*cf.* Rem. Rev. Stat., § 5271].

The legislature, in the exercise of its discretion, could well have reasoned that it had provided for adequate notice to the electorate by compliance with the above notice requirements. The reasoning of the legislature had its desired result in the instant case. Prior to the election, the entire proposal was published in two daily newspapers for twenty-three consecutive publications (covering a period of twenty-seven days), and pamphlets were mailed to eleven thousand homes, covering substantially every address in the city. Radio and television announcements were made, and the issue was thoroughly debated and discussed at many service and social clubs. That the notice was effective is evidenced by the unusually large number who participated in the election.

The legislature did provide notice to the electorate in the act of 1903, and, in the instant case, there was full compliance with the statutory requirements. Even though we should assume that the notice requirement of the 1895 act must be read into the act of 1903, the notice which was given in the instant case was a substantial compliance with the statute. We have held that statutory procedural requirements are directory, and that where, as here, there has been *in fact* an abundance of notice, strict adherence to the statute is not required. In *School Dist. No. 81 v. Taxpayers of School Dist. No. 81*, 37 Wn. (2d) 669, 225 P. (2d) 1063 (1950), this court said:

"Through a long line of cases, this court has held that statutes . . . calling for the publication of election notices, are not mandatory and will be considered to have been substantially complied with when an attempt has been

made to comply with the statute, and when wide publicity has been given the matter and the great body of the electors have had actual notice of the time and place of the holding of the election and of the question submitted, unless the statute provides that failure to observe the formalities shall render the election void. [Citing cases.]"

In the cited case, the applicable election law required a newspaper publication thirty days before the election. This court held that *a publication only twelve days prior to the election was substantial compliance*, in view of the wide newspaper publicity, citizen committee activity, and radio broadcasts. In the face of the cited case, the majority have determined that, in the instant case, a publication for *twenty-seven* of the allegedly required thirty days is fatally deficient.

The majority cite the cases of *Wade v. Tacoma*, 4 Wash. 85, 29 Pac. 983 (1892), and *State ex rel. Linn v. Superior Court*, 20 Wn. (2d) 138, 146 P. (2d) 543 (1944), as being controlling and conclusive of the issue here presented.

*Wade v. Tacoma, supra*, is not pertinent for two reasons:

(1) The decision was rendered by this court in March, 1892. The act of 1903 was not passed until eleven years after the decision. The case has no application whatever to any interpretation of the act here in question.

(2) The sole question presented in the cited case was whether the city of Tacoma had complied with the mandate of Art. XI, § 10, with reference to publication. The *Wade* case simply holds that, when a charter amendment is submitted by the city council ("the legislative authority"), being one of the constitutional methods, the constitutional mandate relating to notice must be complied with. We are not here concerned, however, with amending a city charter by either of the constitutional methods.

In *State ex rel. Linn v. Superior Court, supra*, a petition was presented for filing to the city clerk, but it did not contain an affidavit of a qualified voter relative to the genuineness of the signatures, as provided by the act of 1903, § 2, p. 394. The city council placed the petition on file, but refused to place the proposal on the ballot for the ensuing

March 14th regular municipal election, for the reason that the petition did not contain the required certificate. On January 31st, an affidavit was filed with the city clerk which alleged, *inter alia,* that the affiant was a qualified voter in a Seattle precinct, and that he had

". . . so far as is practicable, investigated and checked all of the signatures contained on the attached petitions . . . ; that from such investigation and checking he has reason to believe and therefore does believe that said signatures are genuine."

The city council rejected the petition, in so far as the ensuing March 14th election was concerned, as not having been timely filed. The lower court sustained the action of the city council. On appeal, this court stated [p. 142]:

"The question presented in the case at bar is, at this date, controlled by the section of our state constitution above [Art. XI, § 10], and, for this reason, consideration of the statutes above cited [Laws of 1903, chapter 186, and Laws of 1921, chapter 61, as amended by Laws of 1923, chapter 53] is unnecessary. *We accordingly leave any question which may arise under those statutes for determination when presented.*" (Italics mine.)

The court specifically did not rule upon the effect of those statutes as they provide for any method of amending city charters other than that provided by the constitution. The cited case is not pertinent to the issue presented here.

The majority of the court, in the *Linn* case [p. 144], stated that

"Throughout the section of the constitution [Art. XI, § 10], the words legislative authority are employed without any restrictive words or phrases, and without definition. No specific type of legislative authority is mentioned."

The court then concluded that any proposal initiated by the requisite number of qualified voters constituted an act by *a* legislative authority, as contemplated by Art. XI, § 10, of the constitution. This conclusion disregards the fact that the framers of the constitution, in Art. XI, § 10, used the words "*the* legislative authority." (Italics mine.)

Constitutional provisions should be so construed that no clause, sentence, or word shall be superfluous, void or insignificant. *Group Health Cooperative of Puget Sound v. King County Medical Society*, 39 Wn. (2d) 586, 637, 237 P. (2d) 737 (1951). It is settled law in this state that words used in a constitution must be construed in their usual and ordinary sense. *Pacific Northwest Alloys v. State*, 49 Wn. (2d) 702, 705, 306 P. (2d) 197 (1957), and cases cited; *Gruen v. State Tax Commission, supra*, p. 53, and cases cited.

The article "the" is defined in Webster's New International Dictionary (2d ed.) as follows:

"A demonstrative adjective used chiefly before a noun to individualize, specialize, or generalize its meaning, having a force thus distinguished from the indefinite distributive force of *a, an,* and from the abstract force of the unqualified noun. Thus, *the* man points to a particular man, as distinguished from *a* man and from the generic *man.*"

The word "legislative," when used as an adjective, denotes "Making, or having the power to make, a law or laws; . . . 2. Of or pert. to the making of laws, or the body which makes the laws."

The noun "authority" is defined as the "Legal or rightful power; a right to command or to act; power exercised by a person in virtue of his office or trust."

The plain and ordinary meaning, therefore, of the phrase "the legislative authority," as used in Art. XI, § 10, is that particular body having the legal power to enact laws.

The *Linn* case did not specifically overrule *Benton v. Seattle Electric Co.,* 50 Wash. 156, 161, 96 Pac. 1033 (1908), wherein we said:

"It is maintained that the expression 'legislative authority of the city' means the mayor and city council. This contention is doubtless correct. That expression as used in § 10, art. 11, of the state constitution and in numerous statutes of the legislature, undoubtedly means the mayor and council of the city."

This interpretation was cited with approval in *Neils v. Seattle,* 185 Wash. 269, 53 P. (2d) 848 (1936).

Petitioners for a charter amendment are not "the legislative authority." Such petitioners are simply vested with a *franchise* or *power* by which they can present a proposal to "the legislative authority," as such, or to the voters, acting in their capacity as *a* legislative authority. The majority of the voters voting upon a proposal have legislative authority, when they exercise their right of franchise.

The intent of the framers of the constitution is clear that the duly elected municipal legislative body is "the legislative authority of such city," as that term is used in Art. XI, § 10. We should specifically reaffirm the rules announced in the *Benton* and *Neils* decisions with reference thereto, and, in so far as the *Linn* case conflicts with this conclusion, it should be overruled.

For the reasons stated, the judgment should be affirmed.

MALLERY, FINLEY, and HUNTER, JJ., concur with OTT, J.

FINLEY, J. (dissenting)—This case presents the age-old problem, discussed at some length by the late Mr. Justice Cardoza in his compact but scholarly book, *The Nature of the Judicial Process*. More particularly, the case poses the question of the function and the responsibility of judges when confronted with the necessity of making a choice between giving effect to (a) the clear-cut literal meaning of language or (b) the clear-cut, obvious purpose or intent that prompted such language.

In other words, where the choice is between form and substance, should the courts give effect to the thought, intent, or purpose that was being articulated or expressed, or to the method or form of the articulation of the thought, intent or purpose? In *Meredith v. Kauffman*, 293 Ky. 395, 169 S. W. (2d) 37, the court said:

"The fundamental purpose in construing a constitutional provision is to ascertain the intention of the framers and the people in adopting it. *People's Transit Co. v. Louisville R. Co.*, 220 Ky. 728, 295 S. W. 1055. Words are but imperfect vehicles designed to convey thought and in gathering the thought intended to be conveyed the purpose behind the words should be kept in mind. The Constitution is

concerned with substance and not with form and its framers did not intend to forbid a *commonsense application of its provisions.*" (Italics mine.)

The problem involved is not restricted exclusively to statutes and the constitution. It may arise regarding contracts, wills, articles of incorporation; in fact, wherever written language is used to express intent and purpose in a document of serious or significant legal portent or implication.

In *In re Morris' Estate,* 56 Cal. App. (2d) 715, 133 P. (2d) 452, the California court said:

"The most important duty devolving upon a court in the construction of a written instrument, whether the same be a constitution, statute or a contract, is to discover the true meaning of the instrument and to glean therefrom the purposes and objects of the same."

The reasoning of the majority opinion and the conclusions reached therein suggest that (a) the meaning of language and (b) the purpose or intent behind or giving rise to such language are always unequivocally identical; that the only function and responsibility of a judge is to look at the unequivocal identities of meaning and purpose, and to give effect to these—and that the end result must or should be always the same.

I agree with Justice Holmes' comment (*The Path of the Law (1897),* 10 Har. L. Rev. 457, 465) that, if this was true, the judicial function would involve nothing more than a problem in simple arithmetic—the judge merely adding or subtracting, with the answer always the same. The indicated method of reasoning, generally speaking, negatives any possibility or probability of different viewpoints, dissents, or divided five-to-four decisions. If there are dissents or five-to-four decisions, and if lawyers write briefs and argue in support of conflicting viewpoints, then, at least inferentially, one side or the other is either (a) not too alert mentally and are, as Holmes said, "not doing their sums right, and, if they would take more trouble, agreement inevitably would come;" or (b) they are somewhat

amoral intellectually,—and attempt to distort meaning, or intent and purpose, thereby substituting an incorrect sum for the true and correct answer in the process of doing their problem in mathematics or legal logic.

If the facts of life are realistically evaluated, it seems to me that the judicial function is not too accurately evaluated by the reasoning of the majority opinion. I thoroughly subscribe to the ideal of *certainty* and *stability,* but this does not require the sacrifice of purpose and intent on the altar of form or so-called literal meaning. (See Holmes' *Law in Science and Science in Law* (1899), 10 Har. L. Rev. 441, 460.) The ideal may be served effectively, honorably, and in good conscience by emphasis upon purpose and intent, as well as by emphasis upon literal meaning. This, indeed, poses a problem of judicial responsibility, which is inescapable or inherent in the very nature of the judicial process. In *State ex rel. Linn v. Superior Court,* 20 Wn. (2d) 138, 146 P. (2d) 543, the court stated:

"Constitutions are designed to endure through the years, and constitutional provisions should be interpreted to meet and cover changing conditions of social and economic life."

and quoted, with appoval, the Massachusetts court in *In re Opinion of the Justices to the Senate,* 291 Mass. 572, 196 N. E. 260, as follows:

" 'The Constitution of the Commonwealth was designed to be an enduring instrument so comprehensive and fundamental in its terms that a free, intelligent and virtuous people may govern themselves under its beneficent provisions through vast changes in social and industrial conditions. In construing its regulations regard must be had to their spirit and purpose as well as to their letter. The great and underlying principles announced by the Constitution and its Amendments must be kept in mind as well as possible narrow interpretations of particular phrases.' "

The well-known phrase, "a government of law and not men," expresses an ideal to which most of us subscribe and try our honest best to conform. However, the phrase is one which should be accorded some degree of realistic evaluation in terms of the fact that (a) law (constitutional

or otherwise) and (b) government, do not come into being and do not operate automatically.

If it could be said in the instant case that there is doubt as to the intent and purpose of the pertinent constitutional provisions, we could well be faced with a different problem; but, in the instant case, intent and purpose are undeniably crystal clear. In *State ex rel. Swan v. Jones*, 47 Wn. (2d) 718, 289 P. (2d) 982, an opinion signed by four members of the court stated:

"Notice and information to the voters of a city regarding a proposed charter and its provisions was *the only purpose of the procedural details written into the constitution regarding publication in two daily newspapers.*"

The record in the instant case convinces me that both *unquestionably sincere* and *undeniably effective* steps were, in fact, taken in providing better than reasonably adequate notice to the electorate of Yakima respecting the proposed amendment of the city charter. I believe the trial judge arrived at the only commonsense solution of the problem involved in this case, and that his decision should be affirmed.

The reasoning as well as the result reached in the majority opinion have compelled me to offer the foregoing comment, supplementing the views expressed in Judge Ott's dissenting opinion. On the basis of Judge Ott's views, as well as for the reasons set out hereinbefore and in *State ex rel. Swan v. Jones, supra,* I dissent.

MALLERY, OTT, and HUNTER, JJ., concur with FINLEY, J.